IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| RFCYBER CORP., <br> Plaintiff, <br><br> v. <br><br> THE KROGER COMPANY. <br> Defendant. | Case No. <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, RFCyber Corp. ("RFCyber" or "Plaintiff"), files this Complaint against Defendant The Kroger Company ("Kroger" or "Defendant"), for patent infringement under 35 U.S.C. § 271 and alleges as follows:

**THE PARTIES**

1. RFCyber is a Texas corporation with a place of business at 7700 Windrose Avenue, Suite G300, Plano, Texas 75024. RFCyber is the exclusive licensee with the right to sue, for U.S. Patent No. 8,448,855 (the "Patent-in-Suit" or "Asserted Patent").

2. Defendant Kroger is a corporation organized and existing under the laws of Ohio, with one or more regular and established places of business in this District at store locations including at least at 300 East End Boulevard North, Marshall, Texas 75670; 701 West Marshall Avenue, Longview, Texas 75601; 2415 US-79, Henderson, Texas 75654; 3205 North University Drive, Nacogdoches, Texas 75965; 325 East Spring Street, Palestine, Texas 75801; and 1215 North Street, Nacogdoches, Texas 75961.

3. Kroger may be served with process through its registered agent, Corporation Service Company, d/b/a CSC-Lawyers Incorporating Service, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

5. This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Defendant has sufficient minimum contacts with the forum because Defendant has physical locations and transacts substantial business in the State of Texas and in this Judicial District. Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below.

6. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b). Kroger is registered to do business in Texas and, upon information and belief, Kroger has transacted business in this Judicial District, has committed acts of direct and indirect infringement in this Judicial District, and has regular and established places of business in this Judicial District as set forth above. Kroger is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. On information and belief, Kroger through its own acts and/or through the acts of others, makes, uses, sells, offers to sell, and/or imports infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District such that this

venue is a fair and reasonable one. Further, upon information and belief, Kroger has admitted or not contested proper venue in this Judicial District in other patent infringement actions.

## PATENT-IN-SUIT

7. On May 28, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,448,855 (the "'855 Patent") entitled "Method and Apparatus For Funding An Electronic Purse." A true and correct copy of the '855 Patent is attached as Exhibit A.

8. RFCyber is the exclusive licensee with the right to sue for the '855 Patent, and holds the exclusive right to take all actions necessary to enforce its rights to the Patent-in-Suit, including the filing of this patent infringement lawsuit. RFCyber also has the right to recover all damages for past, present, and future infringement of the Patent-in-Suit and to seek injunctive relief as appropriate under the law.

## INFRINGEMENT ALLEGATIONS

9. The technologies of the Patent-in-Suit were variously invented by Liang Seng Koh, Hsin Pan, Futong Cho, and Fuliang Cho. The Patent-in-Suit generally covers apparatus and methods for enabling secure contactless payment with a portable device. In one exemplary embodiment, a device may contactlessly emulate a payment card. For example, users may select one of a plurality of payment cards stored in a memory, and carry out a contactless transaction at a point of service ("POS"). In another embodiment, the device may securely conduct transactions over an open network with a payment server. By contactless payments, the inventions of the Patent-in-Suit provide significant time-savings, particularly in situations where a payment process would otherwise involve more than one contact between a merchant and consumer.

10. Kroger has manufactured, used, marketed, distributed, sold, offered for sale, and exported from and imported into the United States devices and software that infringe the Patent-

in-Suit. Kroger has distributed variants of the Kroger App, Fred Meyer App, Food 4 Less App, Smith's App, Ralph's App, Fry's App, Harris Teeter App, King Sooper's App, Pick'n Save App, Mariano's App, Dillons App, QFC App, Foods Co App, City Market Food & Pharmacy App, Metro Market App, Pay Less App, JacC App, Baker's App, and Gerbes App, that have included functionality to make contactless payments at Kroger locations on any Android or iOS mobile device (*e.g.*, Kroger Pay and Sam's Club Scan & Go functionality) since at least 2019.[1] The Apps for all Kroger store brands have similar appearance and functionality, and upon information and belief, utilize the same software as the Kroger App. The current and previous versions of the aforementioned Apps, and the hardware and software supporting those Apps (including supporting servers) are non-limiting instances of the Accused Products. The Accused Products practice the claims of the Patent-in-Suit to improve the shopping experience of their users, and to improve Kroger's position in the market.

---

[1] https://ir.kroger.com/news/news-details/2019/Kroger-Introduces-Kroger-Pay-and-Kroger-REWARDS-Debit-Card/default.aspx





https://www.kroger.com/d/kroger-mobile-pay

11.     RFCyber has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patent-in-Suit. On information and belief, any prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

**COUNT I**
**(Infringement of the '855 Patent)**

12.     Paragraphs 1 through 11 are incorporated herein by reference as if fully set forth in their entireties.

13. RFCyber has not licensed or otherwise authorized Kroger to make, use, offer for sale, sell, or import any products that embody the inventions of the '855 Patent.

14. Kroger infringes, contributes to the infringement of, and/or induces infringement of the '855 Patent by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '855 Patent including, but not limited to, at least the Accused Products.

15. Kroger has directly infringed and continues to directly infringe the '855 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '855 Patent. Upon information and belief, these products include the Accused Products that practice the methods and systems covered by the '855 Patent, including, for example, contactless payment functionality implemented by the Kroger App, Fred Meyer App, Food 4 Less App, Smith's App, Ralph's App, Fry's App, Harris Teeter App, King Sooper's App, Pick'n Save App, Mariano's App, Dillons App, QFC App, Foods Co App, City Market Food & Pharmacy App, Metro Market App, Pay Less App, JacC App, Baker's App, and Gerbes App. For example, the Kroger App infringes at least Claim 9 of the '855 Patent.

16. For example, Kroger has and continues to directly infringe at least Claim 9 of the '855 Patent by making, using, offering to sell, selling, and/or importing into the United States products that practice a method for funding an e-purse, the method comprising: receiving a request from a portable device; verifying the request with an account in a bank across a network; initiating a fund transfer request by a server with a financial institution administrating the e-purse when the request is successfully verified; sending commands to the portable device to cause an emulator in

the portable device to update a transaction log in the portable device after an authenticity of the commands is verified by a midlet in the portable device, and wherein the request is a response composed by an e-purse applet after the e-purse applet receives an initial request from the midlet in the portable device and a PIN is entered by a user of the portable device and verified, the request is sent over a wireless network to the server, and wherein the e-purse in the portable device has been personalized by operations including:  establishing an initial security channel between the card module and an e-purse security authentication module (SAM) external to the card module to install and personalize the e-purse applet in the card module, and creating a security channel on top of the initial security channel to protect subsequent operations of the card module with the e-purse SAM, wherein any subsequent operation of the emulator is conducted over the security channel via the e-purse applet.

17. The Accused Products practice a method comprising receiving a request from a portable device. For example, Kroger servers receive a request from mobile devices running the Kroger App when performing a contactless or online purchase with a saved payment method, such as a credit card, debit card, gift card value, and/or with cash loaded into the Kroger app.





https://www.kroger.com/d/kroger-mobile-pay?icid=kpfpmts_b%3Akro_banner_ribbon_account-funding_kroger-pay

9





https://www.kroger.com/i/account-funding?icid=kpfpmts_b%3Akro_banner_ribbon_kroger-pay_account-funding

18.     The Accused Products further practice a method of verifying the request with an account in a bank across a network. For example, upon verifying a request for funds (*e.g.*, to complete a transaction with a saved payment card, gift card value, or with account funding), the Kroger App servers (administering the Kroger App) initiate a fund transfer request for the requested funds with the institution administering the user's account.



https://www.kroger.com/d/kroger-mobile-pay

19. The Accused Products further practice a method of initiating a fund transfer request by a server with a financial institution administrating the e-purse when the request is successfully verified. For example, upon verifying a request for funds (*e.g.*, to load money onto the Kroger App or complete a transaction with a saved payment card and/or with account funding), the Kroger App servers (administering the Kroger App) initiate a fund transfer request for the requested funds with the institution administering the user's account.

20. The Accused Products practice a method of sending commands to the portable device to cause an emulator in the portable device to update a transaction log in the portable device after an authenticity of the commands is verified by a midlet in the portable device. For example, upon information and belief, the servers supporting the Kroger App send commands to a phone running the Kroger Application to cause an emulator (*e.g.*, a portion of the Kroger application and/or associated APIs including functionality for logging transactions, rendering cards, and rendering QR/bar codes) to update a transaction log (*e.g.*, purchase history) after the authenticity of commands is verified by a midlet (*e.g.*, the Kroger application), such as via SSL/TLS certificate.

> **Safe & Secure**
>
> Payment information is protected and never stored on your phone so you can rest assured that your transactions will be secure.

https://www.kroger.com/d/kroger-mobile-pay?icid=kpfpmts_b%3Akro_banner_ribbon_services_kroger-pay

21. The Accused Products practice a method wherein the request is a response composed by an e-purse applet after the e-purse applet receives an initial request from the midlet in the portable device and a PIN is entered by a user of the portable device and verified, the request is sent over a wireless network to the server. For example, the request to a server supporting the Kroger application (*e.g.*, to load a card and/or complete a transaction) is a response composed by an e-purse applet (*e.g.*, the software representation of a Kroger card and/or other saved payment methods) after the e-purse applet receives an initial request from the midlet (*e.g.*, the Kroger App) and a PIN (*e.g.*, a face ID, 4-digit PIN, password, fingerprint) entered by the user is verified.

> **How is my payment information secured?**
>
> Kroger Pay accesses the payment methods you already have loaded to your Account. Security is important, so we will ask for the CVV for any credit cards added. Kroger Pay does not store your card information on your device, and your untokenized card information is not shared with the store during checkout. What this means is that Kroger will securely store your payment information, and instead of sharing your actual card information at the time of payment, will instead share a single-use token that represents your card. This keeps your sensitive information protected! As an added layer of security, you will need to authenticate with biometrics or a PIN before a QR Code can be generated.

https://www.kingsoopers.com/i/kroger-pays-faq

22. The Accused Products practice a method wherein the e-purse in the portable device has been personalized by operations including: establishing an initial security channel between the card module and an e-purse security authentication module (SAM) external to the card module to install and personalize the e-purse applet in the card module. For example, upon information and belief, saving a card in the Kroger App comprises establishing an initial security channel (*e.g.*, SSL/TLS connection) between the card module (*e.g.*, a secure memory area in which sensitive card information is saved) and an e-purse security authentication module external to the card module (*e.g.*, a server security module) to install and personalize the software representation of a user's saved card.

> **9. KROGER PAY**
>
> Kroger Pay is a digital wallet offered by Kroger within the App. The Kroger Pay wallet allows you to store tokenized payment card information for permitted payment cards and initiate transactions from such cards using your mobile phone at participating locations in the Kroger Family of Companies. By loading your payment card information within the App, you have requested that such payment card(s) be made available through the Kroger Pay functionality to initiate transactions as described herein. Neither the Kroger Pay wallet nor the App stores untokenized card information.
>
> You must have established a digital account and have downloaded the App to your mobile phone to participate in Kroger Pay. You may load to your Kroger Pay wallet with your Kroger Rewards Debit Card and any credit card, debit card or prepaid card that participates in one of the payment networks we identify from time to time by providing the card number and any other information requested. You may load your payment card information to your digital account through the Site or the App. All payment card information that you add to or update in your digital account via the Site or your Kroger Pay wallet will automatically be updated within both your digital account accessible through the Site and the Kroger Pay wallet. You may not load a non-reloadable gift card bearing one of the brands of the Kroger Family of Companies to your Kroger Pay Wallet at this time.

https://www.kroger.com/i/terms/website-and-app

> To pay for a purchase using Kroger Pay, you must open the Kroger Pay functionality with the App on your mobile phone and authenticate your identity when prompted via PIN, fingerprint or facial recognition. Once you are authenticated, Kroger Pay will generate and deliver a transaction-specific QR (Quick Response) Code to your mobile phone that you must scan at the POS (manned or self-checkout) to initiate payment at checkout. The QR Code includes your Kroger Co. Family of Stores Rewards program information as well as your tokenized payment card information. If the transaction is approved, a printed receipt will be available at checkout. The Kroger Pay wallet supports split tender transactions to the extent otherwise permitted at the point of sale at the Kroger Family of Companies.

https://www.kroger.com/i/terms/website-and-app

23. The Accused Products practice a method wherein the e-purse in the portable device has been personalized by operations including: creating a security channel on top of the initial security channel to protect subsequent operations of the card module with the e-purse SAM, wherein any subsequent operation of the emulator is conducted over the security channel via the e-purse applet. For example, upon information and belief, personalization further includes creating a security channel on top of the initial security channel, *e.g.*, via an additional layer of encryption, such as a user device fingerprint and/or key used to encrypt transmitted card data, to protect any

subsequent operation of the card module with the security module of the Kroger servers. For example, upon information and belief, any subsequent operation of the emulator portion of the Kroger App (*e.g.*, to load funds or conduct transactions with a given card applet) are protected by such fingerprints, keys, and/or certificates.

24. Kroger has indirectly infringed and continues to indirectly infringe one or more claims of the '855 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as Kroger's customers and end-users, in this District and elsewhere in the United States. For example, Kroger's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '855 Patent. Kroger induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of Kroger's inducement, Kroger's customers and end-users use Accused Products in a way Kroger intends and directly infringe the '855 Patent. Kroger performs these affirmative acts with knowledge of the '855 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '855 Patent.

25. Kroger has indirectly infringed and continues to indirectly infringe one or more claims of the '855 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Kroger's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that

the '855 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '855 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Kroger to be especially made or adapted for use in the infringement of the '855 Patent. Kroger performs these affirmative acts with knowledge of the '855 Patent and with intent, or willful blindness, that they cause the direct infringement of the '855 Patent.

26. Because of Kroger's direct and indirect infringement of the '855 Patent, RFCyber has suffered, and will continue to suffer, damages in an amount to be proved at trial.

27. Because of Kroger's direct and indirect infringement of the '855 Patent, RFCyber has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law, unless Kroger's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

28. Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant infringes one or more claims of each of the Patent-in-Suit;

b. Entry of judgment declaring that Defendant's infringement of the Patent-in-Suit is willful;

c. An order awarding damages sufficient to compensate Plaintiff for Defendant's infringement of the Patent-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

d. Enhanced damages pursuant to 35 U.S.C. § 284;

  e. Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285;

  f. An accounting for acts of infringement;

  g. Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

  h. Such other and further relief as the Court deems just and proper.

Dated:  July 18, 2024        Respectfully submitted,

               */s/ Alfred R. Fabricant*
               Alfred R. Fabricant
               NY Bar No. 2219392
               Email: ffabricant@fabricantllp.com
               Peter Lambrianakos
               NY Bar No. 2894392
               Email: plambrianakos@fabricantllp.com
               Vincent J. Rubino, III
               NY Bar No. 4557435
               Email: vrubino@fabricantllp.com
               Richard M. Cowell
               NY Bar No. 4617759
               Email: rcowell@fabricantllp.com
               Jacob Ostling
               NY Bar No. 5684824
               Email: jostling@fabricantllp.com
               **FABRICANT LLP**
               411 Theodore Fremd Avenue,
               Suite 206 South
               Rye, New York 10580
               Telephone: (212) 257-5797
               Facsimile: (212) 257-5796

               ***ATTORNEYS FOR PLAINTIFF***
               ***RFCYBER CORP.***